JUSTICE LEAPHART,
concurring in part and dissenting in part.
¶47 I concur with the resolution of issues two, three and four. I dissent from issue one as to the First Amendment claim.
¶48 The District Court concluded that the County Superintendent failed to consider Dr. Quick’s First Amendment rights by applying the public employee — free, speech balancing test in Pickering. In revers *252 ing the District Court, this Court agrees with the Board that a Pickering analysis was unnecessary because the County Superintendent specifically found that Dr. Quick’s exercise of free speech rights did not serve as the basis for her termination. The Court states:
For the District Court to conclude otherwise required a substitution of its own judgment for that of the County Superintendent’s as to the weight of the evidence, which was beyond the permissible scope of review. We conclude that the District Court erred when it concluded that the State and County Superintendents did not properly consider Quick’s First Amendment rights pursuant to Pickering.
¶49 I disagree with the Court’s determination that the County Superintendent specifically found that Dr. Quick’s exercise of free speech rights did not serve as a basis for her termination.
¶50 The County Superintendent found that Dr. Quick wrote the letter to the editor of the Chronicle while she was an employee of the School District and that it was delivered to the Chronicle at noon on December 1,1995. The County Superintendent concluded that, due to the loss of confidence and trust in Dr. Quick by key supervisory administrators and their unwillingness to work with Dr. Quick, there was good cause for terminating Dr. Quick. The County Superintendent stated: “Whether writing the letter to the editor was a violation of policy or whether the letter is protected by the First Amendment does not require resolution. However, this is not to say that the letter to the editor is irrelevant.”
¶51 The Superintendent’s determination that the First Amendment issue did not require resolution is a legal conclusion. As such, the District Court, pursuant to its standard of review under § 2-4-704, MCA, had authority to reverse this conclusion of law if it determined that it was in violation of constitutional provisions, affected by other error of law, or arbitrary or capricious.
¶52 Here, the Superintendent stated that, although the First Amendment issue did not have to be resolved, that was not to say that the letter to the editor was irrelevant. The importance of the letter is clear from the references in the Superintendent’s Memorandum to the following two facts: 1) administrator Diana McDonough viewed the letter as being in direct conflict with Dr. Quick’s communications to McDonough and thus the letter was a reason for McDonough’s loss of trust and confidence in Dr. Quick; 2) administrator Bill Franks said that there was a divisive polarization of the administration after Dr. *253 Quick wrote the letter to the editor. Having stated the letter was not irrelevant and having cited two instances of relevancy, it is clear that the Superintendent viewed the letter as a relevant if not key factor in the decision to terminate.
¶53 Accordingly, I disagree with the Court’s characterization that the letter was somehow separate and distinct from the “other good causes” that existed to terminate Dr. Quick. I would hold that the Superintendent erred as a matter of law in concluding that “whether the letter is protected by the First Amendment does not require resolution.”
¶54 As protected speech that was clearly relevant to the decision to terminate Dr. Quick, the letter required application of the Pickering test. Because the Superintendent failed to make the necessary findings under Pickering, I would affirm the District Court’s reversal of the Superintendent on issue one and remand for findings and conclusions under Pickering.